# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## FITCHETT AND ALS V. SMITH'S ADM'R AND ALS.

### February 28th, 1884.

MARRIAGE—*Colored persons—Cohabitations—Legitimacy—Case at bar.*—L. and S, colored persons, were never married, but cohabited together as man and wife previous to November, 1863, when S enlisted in the U. S. army. The result of the cohabitation was a child—I. S died in 1865, but before his death recognized the child *en ventre sa mere*, as his, and declared his intention to marry L, who died a few years after the birth of the child, the latter subsequently dying unmarried and childless. To this child, before its death, the U. S. government paid $1,200 for her father's services. After her death I's maternal next of kin claimed that she was illegitimate and that they were entitled to her whole estate, which claim was contested by her paternal next of kin, who insisted on the division of the estate into moieties, one of which should be distributed among them.

HELD :

The act of 27th February, 1866 (Code 1873, chapter 104, section 13), being retrospective, legitimated the child I, though her parents had ceased to cohabit as man and wife before its passage, and I's estate must be divided into two moieties—one for the maternal, the other for the paternal next of kin.

Appeal from decree of circuit court of Northampton county, rendered October 18th, 1880, in a chancery suit, wherein Henry Fitchett, and Esther, his wife, and Robert Stevens, and Adah, his wife, are plaintiffs, and John R. Dalby, administrator of Ibby Jane Smith, deceased; Ibby Scott, Thomas Scott, Laura Taylor, and Nat Robbins, and Nellie, his wife, are defendants.

Opinion states the facts.

*G. T. Garrison* and *T. C. Walston,* for the appellants.

*E. J. Spady,* for the appellees.

FAUNTLEROY, J., delivered the opinion of the court.

The object of this suit is to ascertain who are the distributees, or heirs at law, of the estate of Ibby Jane Smith, a *colored* girl, who died in the county of Northampton, at the age of sixteen, unmarried and without issue, in the year 1880; and, further, to obtain distribution of her estate in the hands of her administrator. The controversy is between the *maternal* and the *paternal* kindred of the decedent.

The estate consists of the sum of $1,200, in the hands of the said administrator, which was allowed and paid to the said Ibby Jane Smith by the United States government for the service of her father, Seth Scott, in the army of the United States during the late civil war.

The question raised is that of the *legitimacy* of the girl, the said Ibby Jane Smith, deceased. If she died a *bastard*, the *maternal* kindred are entitled, under the law of Virginia, to her estate, to the exclusion of the *paternal* kindred; if she was the legitimate child of Seth Scott, the *paternal* kindred must share with the *maternal* kindred in the distribution of the estate.

Ibby Jane Smith, the decedent, was the daughter of Leah Jacob, a colored woman, who was formerly a slave; who was never married, and who died a few years after Ibby's birth, leaving Ibby her only surviving child.

The only next of maternal kin of the said Ibby surviving at her death were Esther Fitchett and Adah Stevens, two of the appellants, sisters of Ibby's deceased mother, Leah Jacob. The said aunts, with their husbands, the other two appellants, filed their bill praying for a distribution of the estate, and claiming the whole of it, because of the alleged illegitimacy of Ibby Jane Smith. The paternal claimants (the appellees) were made parties defendant to the bill, together with the administrator; and in

their answers they deny the illegitimacy of Ibby Jane Smith, and aver that she was the legitimate child of Seth Scott and Leah Jacob; that she was legitimated by the act of the general assembly of Virginia February 27th, 1866; that the said Seth Scott and Leah Jacob, her father and mother, had cohabited as husband and wife, but had ceased to cohabit before the passage of the act; that Ibby Jane Smith was recognized by the said Seth Scott as his child; and that the said Seth Scott died in May, 1865, while a soldier of the United States at Point Lookout. The record shows that the said Seth Scott enlisted in the United States army in October or November, 1863, and left Northampton before the birth of Ibby Jane Smith, and never did return, and never did see the said Ibby Jane Smith.

The court below, by its aforesaid decree of October 18th, 1880, held that Ibby Jane Smith was the legitimate child of Seth Scott and Leah Jacob, and that the estate should be divided into moieties, of which the one should be distributed to the maternal, and the other to the paternal kindred of the said Ibby Jane Smith, deceased. From this decree the maternal kindred appealed.

The act of the 27th February, 1866, is embodied in the Code of 1873, chap. 104, § 13: "Where colored persons, before the passage of this act, shall have undertaken and agreed to occupy the relation to each other of husband and wife, and shall be cohabiting together as such at the time of its passage, whether the rites of marriage shall have been solemnized between them or not, they shall be deemed husband and wife, and be entitled to all the rights and privileges, and subject to the duties and obligations of that relation, in like manner as if they had been duly married by law; and all their children shall be deemed *legitimate*, whether born before or after the passage of this act. And when the parties have ceased to cohabit before the passage

of this act, in consequence of the death of the woman, or from any other cause, all the children of the woman, recognized by the man to be his, shall be deemed legitimate."

We think the evidence in this case, as disclosed in the record, meets all the requirements of the statute, and brings the case of Ibby Jane Smith fully within the terms and intendment of the law.

It is conceded by the appellants that Ibby Jane Smith is the *natural* child of Seth Scott.

The answers of the defendants, and the depositions in the cause, show that Seth Scott and Leah Jacob cohabited together as man and wife, in pursuance of an agreement so to do; that they were regarded as man and wife, cohabiting as such, by the community in which they lived, and by their own relatives and friends; that they did so cohabit from 1861 till October or November, 1863, when Seth Scott enlisted in the United States army; that they acknowledged each other as man and wife; that Seth Scott repeatedly, after he had enlisted as a soldier and had left Northampton county, spoke of Leah Jacob as being pregnant by him; and to one witness (James Spady), who went to see him at Camp Hamilton, in February, 1864, he spoke of her and the child (who had been born very shortly after he had left his home), and told him to look after her and the child; that he intended to marry her (Leah) when he arrived at home.

We think these facts show a sufficient agreement to cohabit as man and wife between Seth Scott and Leah Jacob—a sufficient cohabitation between them as man and wife—and a sufficient recognition by the said Seth Scott of the said Ibby Jane Smith as his child, begotten by him of said Leah Jacob, to legitimate the said Ibby Jane Smith. And we are of opinion that the recognition required by the statute (Code of 1873, chapter 104, section 13) to legitimate colored children of parents who had ceased to cohabit

prior to the passage of the act of 27th February, 1866, might occur prior to the passage of the said act, upon a proper construction of the said act.

We find no error in the decree of the circuit court of Northampton county complained of, and the same must be affirmed.

DECREE AFFIRMED.